<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL A. AKEGNAN AND MAIMOUNAT TOURE AKEGNAN, *on behalf of themselves and those similarly situated*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>TRINITY FINANCIAL SERVICES, LLC; LEOPOLD & ASSOCIATES LIMITED LIABILITY COMPANY; LEOPOLD & ASSOCIATES PLLC; SAUL O. LEOPOLD; DON A. MADDEN, III; and JOHN DOES 1 to 10,<br><br>      *Defendants*. | Civil No. 2:20-15761 (KSH) (CLW)<br><br><br><br><u>OPINION</u> |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

**I.   Introduction**

This matter comes before the Court on the motion (D.E. 42) filed by plaintiffs Paul A. Akegnan and Maimounat Toure Akegnan to amend or alter the Court's December 6, 2021 dismissal order under Fed. R. Civ. P. 59(e). For the reasons that follow, the motion is denied.

**II.   Background**

The facts and procedural history relevant to the instant motion are as follows.[1] On November 14, 2005, plaintiffs executed a note secured by a mortgage on their property. (D.E. 1-1, Collection Letter at 1.) Plaintiffs later defaulted on their mortgage and their account was transferred for collection. (D.E. 1, Compl. ¶¶ 24, 26-27.) On or about November 7, 2019, plaintiffs

---

[1] A full recitation of this matter's facts and procedural history is set forth in the Court's December 6, 2021 opinion. (D.E. 40.)

1

received a debt collection letter from/on behalf of two debt collection agencies and their managing members—defendants Trinity Financial Services LLC and Don A. Madden III (the "Trinity defendants") and Leopold & Associates LLC, Leopold & Associates PLLC, and Saul O. Leopold (the "Leopold defendants," together with the Trinity defendants, "defendants")—that purportedly violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (*Id.* ¶¶ 7-11, 29, 32; *see* Collection Letter at 1.)

On November 9, 2020, plaintiffs filed their original complaint asserting violations of §§ 1692e, f, and g of the FDCPA. (D.E. 1.) They alleged that the debt collection letter failed to "clearly and accurately" state the principal amount of their debt and unlawfully assessed interest charges and late fees. (Compl. ¶¶ 2, 33-38.) They also sought certification of one class of plaintiffs defined to include "[a]ll natural persons with an address in the State of New Jersey to whom, beginning November 7, 2019, . . . [d]efendants sent one or more letter(s) in attempts to collect a debt in the same or materially similar form as Exhibit A." (*Id.* ¶ 47.)

The Leopold defendants moved to dismiss the original complaint, and the Trinity defendants moved for judgment on the pleadings. (D.E. 18, 24.) In support, defendants provided the Court with plaintiffs' promissory note and mortgage which identified $112,000 as the principal amount of the debt—consistent with the amount listed in the collection letter—and provided for the assessment of interest charges and late fees. (*See* D.E. 18-3, 18-4.) Because the promissory note "sp[oke] for itself," the Court dismissed the original complaint with prejudice on grounds that "no curative amendment could remedy plaintiffs' faulty FDCPA allegations." (D.E. 40, Op. at 14.)[2]

---

[2] As the Court indicated in its opinion (*see id.* at 4, 13-14), plaintiffs informally requested leave to amend the complaint in their opposition briefs. (*See* D.E. 26, MTD Opp. Br. at 9; *see also* D.E. 28, JOP Opp. Br. at 17.)

Plaintiffs now move the Court under Fed. R. Civ. P. 59(e) to amend its dismissal order so as to allow them leave to file a proposed amended complaint they have attached to their moving brief. (D.E. 42-1, Mov. Br; D.E. 42-3, FAC.) As defendants point out in opposition (D.E. 43, 44), the allegations in the proposed amended complaint hinge on a different set of facts (all of which were available at the time the original motions were briefed) and assert both refurbished and new causes of action.

For example, plaintiffs now allege that their FDCPA claim is premised not on defendants' failure to adequately convey the contents of the promissory note but, rather, on: (i) plaintiffs' bankruptcy filing in 2009; (ii) defendants' acceleration of the debt in 2007; and (iii) defendants' initiation of state court foreclosure proceedings against plaintiffs in January 2021.[3] (FAC ¶¶ 35-39, 42-43, 75-87.) In other words, irrespective of what the promissory note allows, plaintiffs assert the debt collection letter was false and misleading in violation of 15 U.S.C. § 1692e, failed to accurately state the amount of the debt in violation of § 1692g, and was an "unfair or unconscionable means" to collect in violation of § 1692f because defendants: (i) were barred from charging interest charges and late fees due to their debt acceleration in 2007; and (ii) could not collect the outstanding balance from plaintiffs because their personal liability had been discharged in the 2009 bankruptcy.[4] Plaintiffs also claim that defendant Trinity lacked a "mortgage servicer license" when it attempted to collect their debt, which is required by the Mortgage Servicers

---

[3] Defendants' motions to dismiss/for judgment on the pleadings were filed in March 2021, approximately two months after they initiated state court foreclosure proceedings.

[4] Plaintiffs further allege that defendants knew this to be true when they commenced state court foreclosure proceedings in January 2021 and, thus, the foreclosure complaint constitutes a separate deceptive "communication" that violates the FDCPA. (*See id.* ¶¶ 106, 111.)

3

Licensing Act, N.J.S.A. 17:16F-27, *et seq.* (the "MLSA").[5] (*Id.* ¶¶ 63-74, 101-14.) That new allegation is used to support their FDCPA claim and also to lay the foundation for an alternative cause of action under the New Jersey Consumer Fraud Act. (*See id.* ¶¶ 110, 115-22.)

Additionally, the proposed amended complaint seeks certification of three separate classes of plaintiffs under Rule 23. The first is an "Unlawful Late Fee Class," defined to include persons from whom defendants sought to collect late fees "following acceleration of consumer debt" (*id.* ¶ 88(a)); the second is an "Unlawful Mortgage Servicing Class," defined to include persons from whom defendant Trinity sought to collect consumer debts while unlicensed (*id.* ¶ 88(b)); and the third is an "Unlawful Collection by Foreclosure Class," defined to include persons against whom defendants initiated foreclosure actions after discharge of personal liability in bankruptcy (*id.* ¶ 88(c)).

## III. Discussion

When the Court enters a dismissal with prejudice, "a party may seek to amend the complaint (and thereby disturb the judgment)" through Fed. R. Civ. P. 59(e). *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 252 (3d Cir. 2007). Under that Rule, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). As a general matter, Rule 59(e) motions must rely on one of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *OR v. Hutner*, 576 F. App'x 106, 110 (3d Cir. 2014) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). However, "[w]here a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and

---

[5] The complaint alleges that defendant Trinity operated without a license from July 28, 2019, when the MLSA became effective, through September 17, 2020. (*Id.* ¶¶ 65-67.)

4

59 inquiries turn on the same factors"—*i.e.*, the factors set forth in Rule 15(a). *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004) (quoting *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001)); *see Holland v. Simon Prop. Grp., Inc.*, 495 F. App'x 270, 273 (3d Cir. 2012) ("Where, as here, the Rule 59(e) motion is timely filed, the District Court should consider the factors set forth in [Rule] 15(a) when determining whether to grant the postjudgment motion to amend."). Those factors include "undue delay, bad faith, prejudice, or futility." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230-31 (3d Cir. 2011) (internal citations and quotations omitted).

Here, although defendants focus solely on the Rule 59(e) factors in their opposition briefs, the Court must analyze the Rule 15(a) factors because plaintiffs timely filed their motion to amend within 28 days of entry of the Court's dismissal order. (*See* D.E. 40-42.) Plaintiffs make much of defendants' failure to analyze the Rule 15(a) factors, yet they themselves only specifically addressed two of the four factors—undue delay and unfair prejudice—and did so for the first time in reply. (*See* D.E. 46, Reply Br. at 7-8.) Nevertheless, because the Court has "broad discretion to decide motions to amend," it will analyze all of the Rule 15(a) factors on their merits, including those not addressed in the parties' briefing. *Danise v. Saxon Mortg. Servs., Inc.*, 2016 WL 4769733, at *3 (D.N.J. Sept. 12, 2016) (Dickson, M.J.); *accord Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993) ("The grant or denial of leave to amend is a matter committed to the sound discretion of the district court.").

### a.  Undue Delay and Bad Faith

The Court begins by analyzing undue delay and bad faith, both of which "focus on the plaintiffs' motives for not amending their complaint . . . earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). It is well settled that "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton*, 252 F.3d at 273.

Accordingly, the Court must consider "whether new information came to light or was available earlier to the moving party," *In re Adams Golf*, 381 F.3d at 280, and the movant "must demonstrate that its delay in seeking to amend is 'satisfactorily explained,'" *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Brotman, J.) (quoting *Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Ctr., Inc.*, 120 F.R.D. 476, 478 (D.N.J. 1988) (Simandle, M.J.)).

Here, plaintiffs could have introduced all of the allegations in their proposed amended complaint well before the Court granted defendants' motions; indeed, with few exceptions, plaintiffs had this information at their disposal *years* before they filed their original complaint in November 2020. Plaintiffs have not offered any excuse or explanation for their delay,[6] and instead point to a pretrial scheduling order that permitted amendments to the pleadings through February 28, 2022—after the Court dismissed the original complaint with prejudice. (D.E. 39.)

What plaintiffs fail to appreciate is that irrespective of that deadline, the allegations in the original complaint centered on defendants' allowances under the promissory note. When the Court decided the motion to dismiss, as explained *supra*, plaintiffs' allegations were negated by the documentary evidence in the record. Plaintiffs failed to show how an amendment would cure the manifest deficiencies identified by defendants, and as a result the Court dismissed the complaint with prejudice.

---

[6] The Court recognizes that the parties submitted a letter to Magistrate Judge Cathy L. Waldor on November 30, 2021 jointly requesting an extension of discovery deadlines because, among other things, "[p]laintiffs' attorneys have been dealing with ongoing personal and family medical issues." (D.E. 38.) Notwithstanding, under the required analysis the Court cannot allow an amendment on those grounds where the bulk of new factual allegations in the proposed amended complaint were available years before the original complaint was ever filed.

The standard for leave to amend is not whether an amendment is *technically permitted* but, rather, if one "would be *inequitable or futile*." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) (emphasis added). Plaintiffs "relied at their peril on the possibility of adding to their complaint, but in doing so they clearly risked the prospect of the entry of a final dismissal order." *In re Adams Golf*, 381 F.3d at 280. Plaintiffs were aware of that risk when defendants filed their dispositive motions and even recognized in their opposition briefing that their allegations "could be more substantive." (MTD Opp. Br. at 9.)  "[I]t is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices . . . [nor to] rescue parties from their own errors." *Shnewer v. United States*, 2016 WL 4424949, at *6 (D.N.J. Aug. 18, 2016) (Kugler, J.), *aff'd*, 703 F. App'x 85 (3d Cir. 2017).

Furthermore, plaintiffs' proposed extensive amendments are perplexing given their vague arguments in opposition to defendants' original motions. Indeed, their request for leave to amend in connection with the Leopold defendants' motion focused on the promissory note (*see* MTD Opp. Br. at 9 (admitting that "pleadings could be more substantive—especially when it comes to the events which justify [their] allegations that the principal is less than on the promissory note and Defendants did not have right to collect interest and fees")), and their request in connection with the Trinity defendants' motion was bereft of any factual explanation (*see* JOP Opp. Br. at 17 (arguing that plaintiffs "should be afforded an opportunity to amend" and citing the Rule 15(a) standard).). Although the facts at the forefront of the proposed amended complaint had long been at plaintiffs' disposal, they did not reference bankruptcy proceedings, prior debt acceleration, or the improper filing of a state court foreclosure complaint—let alone the licensing issues that purportedly support a newfound cause of action stemming from violations of the MLSA. That plaintiffs brought these transformative facts to the Court's attention only *after* it dismissed the

7

original complaint with prejudice is at best a last-ditch effort to revive an otherwise failing FDCPA claim rather than, as plaintiffs suggest, a good faith effort to clarify "in-artfully stated" allegations. (*See* Mov. Br. at 5.) The undue delay and bad faith factors thus support the denial of plaintiffs' motion to amend.

### b. Prejudice

The Court next turns to the potential for prejudice to defendants, "the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). The issue of prejudice focuses on the "hardship to the defendants if the amendment were permitted." *Cureton*, 252 F.3d at 273. Courts may consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id. See Carr v. New Jersey*, 2012 WL 1574286, at *3 (D.N.J. May 3, 2012) (Falk, M.J.) (denying leave to amend where amendment would, among other things, "force Defendants to . . . evaluate a new claim that could have been brought many months ago and which could require additional and different discovery"); *Stallings ex rel. Est. of Stallings v. IBM Corp.*, 2009 WL 2905471, at *17 (D.N.J. Sept. 8, 2009) (Kugler, J.) (denying motion to amend complaint to incorporate "claims for relief that [had] existed for some time" on grounds that amendment "would unnecessarily delay this litigation and increase costs"); *see also Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (upholding district court's denial of leave to amend, reasoning that "it is plain that allowing the amendment here would inject new issues into the case requiring extensive discovery").

Here, the Court dismissed the original complaint when discovery was in its early stages, but as explained in footnote 6, *supra*, discovery was stalled in part because of circumstances beyond defendants' control. Allowing leave to amend as proposed would substantially alter the

8

scope of this case. Plaintiffs seek to assert new facts and legal theories on behalf of three new proposed classes of plaintiffs, as well as a new cause of action under the New Jersey Consumer Fraud Act. Granting the motion to amend would involve a more expansive factual investigation, require defendants to prepare new defenses, and effectively "begin fact discovery anew." *Stolinski v. Pennypacker*, 2011 WL 13238545, at *8 (D.N.J. June 23, 2011) (Donio, M.J.), *aff'd,* 2011 WL 3608685 (D.N.J. Aug. 15, 2011) (Simandle, J.). The prejudice factor, therefore, favors denying leave to amend.

### c. Futility

While this record supports denial on grounds that plaintiffs' delay was undue, motivated by bad faith, and prejudicial to defendants, *see Adams*, 739 F.2d at 864, for completeness the Court will briefly address the final factor—futility of amendment. "A proposed amendment to a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 465 (3d Cir. 2021). Accordingly, when analyzing futility, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). Under the familiar Rule 12(b)(6) standard, the Court must accept all factual allegations as true "as well as the reasonable inferences that can be drawn from them." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

Analyzing futility here is rendered difficult by the parties' failure to sufficiently brief the merits of plaintiffs' revived FDCPA claims.[7] (*See* Mov. Br. at 1-2, 5-6 (briefly addressing merits

---

[7] The Court is unaware of any cases interpreting the MLSA's licensing requirements and, thus, is unable to determine whether such a violation could constitute an FDCPA or New Jersey Consumer Fraud Act cause of action.

9

of amended allegations).) Notwithstanding, the Court finds that the bulk of the allegations in the proposed amended complaint would not survive a Rule 12(b)(6) motion.

For example, the proposed amended allegations premised on the false and misleading nature of defendants' debt collection letter are likely untimely under the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d) (FDCPA action must be commenced "within one year from the date on which the violation occurs"). Plaintiffs' cause of action began to accrue when they received the debt collection letter on or about November 7, 2019.[8] *See Skinner v. Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 477 (D.N.J. 2012) (Rodriguez, J.) (FDCPA cause of action accrues on date of receipt of collection letter). The proposed amended complaint was submitted to the Court in January 2022, well after the statute of limitations period expired.

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The relation-back doctrine in the rule, however, does not benefit plaintiffs here. While the amended allegations have a loose connection to those in the original complaint (*i.e.*, that the debt collection letter misconstrued the amount defendants were entitled to collect from plaintiffs), plaintiffs assert entirely new facts and theories—including debt acceleration, bankruptcy proceedings, and failure to comply with licensing requirements, among others—as to why the letter violates the FDCPA. *See Glover v. F.D.I.C.*, 698 F.3d 139, 147 (3d Cir. 2012) (amended FDCPA claim did not satisfy relation-back doctrine because it "differed in 'time and type' from the claims earlier alleged against the [] [d]efendants"); *Mendoza v. Forster, Garbus &*

---

[8] The Court presumes that the original complaint was timely filed on November 9, 2020. (*See* D.E. 1.)

*Garbus*, 2018 WL 785857, at *4 (D.N.J. Feb. 8, 2018) (Mannion, M.J.) (relation-back doctrine inapplicable where amended FDCPA allegations "directly reverse[d] one of the crucial factual allegations in the original Complaint, and correspondingly invert[ed] the legal theory on which [plaintiff] relie[d]"). Accordingly, it cannot be said that the original complaint "adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint," and the relation-back doctrine is therefore inapplicable. *Glover*, 698 F.3d at 146 (internal citations and quotations omitted).

Additionally, when plaintiffs' proposed class allegations are examined, the claim that all three proposed classes "exceed fifty persons each based upon public records related to the [d]efendants" (*see* FAC ¶ 91) becomes very hard to accept when the FDCPA allegations regarding debt acceleration and bankruptcy/foreclosure proceedings are tailored to the named plaintiffs and the unique circumstances surrounding their debts.

**IV.    Conclusion**

For the foregoing reasons, the Court finds that the relevant factors weigh in favor of denying leave to amend. Simply put, it would be unjust to allow plaintiffs to sit on pertinent, transformative information, only to disclose it when the Court has ruled in favor of their adversary. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2003) ("Only when [the Rule 15(a)] factors suggest that amendment would be 'unjust' should the court deny leave."). Their motion is therefore denied, and an appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date:  August 16, 2022